1799004. And we have Petitioner on video, is that correct? It's correct. Well, good morning. If you'd state your appearance for the record. It's James Thompson on behalf of Petitioner Appellant Rena. All right. Did you want to reserve any time for rebuttal? Yes, I'm sorry. I would like to reserve 10 minutes for rebuttal. Thank you. Please proceed. In this matter, I'd like to start with addressing Claim 120 and the related claims in the case that fall within the same purview, which are claims that the District Court mistakenly treated as claims first raised in the second petition, when in fact they were raised in the first petition. Claim 120 was raised in the first petition as Claim 22A. They were denied in the second petition as repetitive under Miller, and that was at the Reno case, footnote 32. Well, why don't you identify the gist of the claim? It's ineffective assistance of counsel with respect to hiring or not utilizing experts and the failure of the experts to be provided the information that was necessary for them to make any informed opinions and or even be called in the case. Counsel, let me ask you a question about Claim 120. Yes. Let's assume for a moment it's not procedurally defaulted, and I think it's probably not as I look at this record. It's not certified, so I guess your first burden is to persuade us to certify the issue. What part of the trial are you complaining that an expert wasn't available for? Is it the guilt phase or the penalty phase or both? It's both, Your Honor. Well, at what point in the proceedings did Mr. Reno tell counsel that he didn't want a psychiatric or psychological evaluation? I'm not sure of the exact time period that that was done. Well, whenever it occurred, was counsel really ineffective from that point on, not seeking that evaluation? Yes, because counsel did not get the social history and the background of Reno. No, I understand what the alleged deficiencies are. We can get back to them in a moment. I'm just trying to figure out, once your client says to you, I don't want a psychiatric or psychological evaluation, I instruct you not to get one, can you be ineffective thereafter for not getting one? Yes, I don't know that it's such a simple situation as the client not- How can you compel someone to do that? Because he was very uncooperative. He wasn't found to be mentally deficient in any way. And he was very uncooperative, and he blurted out, he still called the sister, correct? And then he blurted out during the guilt phase, I mean the penalty phase, well, if you think I did it, then give me the death penalty. I mean, he was very uncooperative. How could the counsel be IAC when the client was so uncooperative and so hell-bent on taking that approach? Well, in order to persuade a client of the approach to take based upon the evidence that you've gathered, you've got to gather the evidence first and have a discussion with respect to those matters. I mean, later on, there was no problem with Reno being evaluated by Drs. White and Dr. Wood, and they provided ample declarations of the kind of mental condition that Mr. Reno suffered, including diagnosis of post-traumatic stress disorder, paranoid ideations, and the records themselves talked about schizophrenia, delusional thinking. Had all of that information been given to Reno and presented to him as a way in which to proceed, then I don't think that there would have been the obstacle that the court may proceed. I mean, Dr. Coburn testified in the first trial, and he testified as to premeditation and deliberation being lacking. So the question was is that how was counsel able to present the matter to Reno for a determination and or a decision, and then ultimately, even if the client may be reluctant to proceed in that way, counsel still has the duty to investigate and present the defense that is viable. Whether he would have been evaluated by individuals independently of that is a different matter. There was certainly stuff in the Atascadero records about him being a mentally disordered sex offender and about the fact that he suffered from schizophrenia or schizophrenia after. Can I take you back to the merits of the claim for a moment? Yes. How do we know what testimony would have been presented at the second trial had counsel done what you think he should have done? Well, at first they would have called Dr. Coburn to testify because he testified in the first trial. Right, right. Okay. So I guess I'm asking, let me be more precise in my question. We know what testimony was presented in the first trial, and we know it didn't persuade the trier of fact. Was there any indication in this record of other testimony? In other words, do we have an affidavit from an expert that says, had I been called to testify in the second trial, I would have said X, Y, or Z? Yes. Well, Dr. Woods and Dr. White both submitted declarations in the second petition outlining exactly what it is that they found. Right. So let's focus on that for a moment. Given the results in the first trial, and we're in EDPA land, and so we have to determine whether or not the state court's turning down the ineffective assistance of counsel claim is something no reasonable jurist could do. Because the first trial presented substantial evidence on this point, and your client wasn't successful, how can we find the requisite prejudice from failing to present yet another set of experts in the second trial? I think there's one step in here that's missing that I think is important. The district court here denied this claim on a bar. No, no, I'm looking through. I'm assuming that we should look through to the California Supreme Court decision, either in the first appeal or the first habeas, turning down his ineffective assistance of counsel claim. I'm asking you, how can we find that unreasonable under the circumstances of this case? I think there's two reasons. One is that because of what the district court did do, there was no evidentiary hearing held in the district court. But I'm not worried about the district court ruling for the moment. I'm assuming the district court was incorrect in finding that this was procedurally barred. If it wasn't procedurally barred, it would still have to decide on the merits whether or not to grant the petition. And so I'm now looking at this as if I were the district judge and saying, why was the California court wrong in turning down this claim? Yes, but the court is asking the question of me, which is, what would have made a difference? And what I'm saying is that without an evidentiary hearing in the district court, I can't point to as they did in the last year. But you wouldn't have gotten an evidentiary hearing under Pitholster in the district court had the court simply said, you're right, this claim wasn't procedurally barred. I will now look at the decision of the California Supreme Court, whichever decision one looks through to, and then determine whether or not it was unreasonable. That's all you were entitled to in the district court, wasn't it? Right, but the California Supreme Court denied the claim on the merits. Right, so you wouldn't have been entitled to an evidentiary hearing in the district court had it not erred in finding this claim procedurally barred. You would just simply be entitled to argue on the basis of your petition that the California decision was unreasonable. Unless I'm missing something. But it was unreasonable because the court did not and was not allowed to consider the testimony or the affidavits of Tascadero, CDCR, Dr. Woods, Dr. White, because the California Supreme Court denied funding in the first state petition. So none of that evidence could have been brought into the first state petition, which the district court would have looked at. Because in the first petition, Reno was limited to $3,000 for expenses and investigation and experts and everything else. And he alleged in that first state petition that were he given more money, which he asked for and was denied, he would have put on the case that we put on in the second state petition, or that was put on in the second state petition, which included CDCR, Coburn, Woods, White, and others. We were not allowed to do that. Can I follow up on this? Go ahead. So does your federal habeas petition raise the funding issue? Yes. In one of the claims that was found procedurally barred, right? It's part of claim 120. It's also part of claims 107 and 109, which were also ineffective assistance of counsel issues. Those were barred as excessive, but they weren't because Reno made the showing for the miscarriage of justice exception to get over those particular hurdles, and so that the court should have considered those at the time. Put those aside for a second because I think your procedural bar argument on those is weaker than it is on your claim 120. I'm trying to figure out how it is that you preserved your claim under funding. Was it raised separately, or was it part of 120? It was part of 120. Did the California Supreme Court address prejudice, if we look through to the California Supreme Court on the IACs? In the first state petition, they simply just denied it on the merits. All right. There wasn't a separate ruling of prejudice versus. I'm wondering, just in looking at it, I'm wondering how you could show prejudice in the sense I'm trying to. I think that you would probably have to agree that the facts in your case are, assuming everything is admissible evidence, not talking about the other claims, but with three young boys being murdered, and you've got, I think, Carl, Ralph, and Scott. And that my understanding in the penalty phase, it sounds like did the jury go out and then your client insisted on testifying and it was reopened for him to testify? Is that right? I'm not sure exactly of the procedure. Did your client testify at the penalty hearing? He didn't testify at the guilt phase, correct? No. It came in through his confession. Obviously, that's what. So my understanding is I think that it seems, when we're talking about the cooperation of your client, it seems like counsel may have tried to keep your client off the stand, but then he insisted on what you would have a right to testify at the penalty phase, correct? And it looks like the court reopened it and he testified and said some pretty damning things. I'll ask the government about it, but I'm struggling to see how you could ever show prejudice. Well, just because the client testifies and just because the client testifies that they prefer death even over life without parole or that the jury should give them death doesn't mean that all of the evidence that should have been presented shouldn't have been presented. There was a wealth of information in this case that was developed, as you can look at from the second state petition, that was never introduced in this case and should have been. Had that been introduced, then this client's statement of standing up and saying, if you found me guilty, you may as well go ahead and sentence me to death, would have been just one part of that. Well, it's one part, but it's also a part of it is that he absolutely refused to cooperate in putting on that type of evidence, and you can't compel someone to, you know, even though the attorney has certain strategic things that he can do, he or she can do, and the client doesn't control it, but the client controls the right to testify. You can't stop someone from testifying if they want to do it, and also he was very uncooperative about putting that on, and also I think we have two rehearsals here in terms of, I think it's Judge Hurwitz indicated in the first trial, the psychological evidence did nothing to really help him out in either the guilt or the penalty phase. But maybe let's look at some, I'm curious on perhaps looking at the confession component here. Judge Ketelman, before we move to that, can I ask you a question? Yes, go ahead. So I'm not going past procedural bar quite as quickly as Judge Hurwitz, and I have some concern that it doesn't seem your arguments are consistent in the district court with what you're presenting now, and at the district court, what I thought is that you had argued claim 120 only was presented in the second state habeas petition. It wasn't presented in the first petition, and then the arguments that you made in the district court with regard to procedural bar are different than what you're making now. Am I just reading this wrong? Am I incorrect on that? I mean, we may not have articulated claim 120 appropriately in the district court petition. I'm not sure. But claim 120 was clearly denied on the merits by the California Supreme Court, and that's Reno 55 Cal. The problem you have is coming before us and making an argument you didn't make below. So there would seem to be a waiver problem if you're coming in and making new arguments before the court of appeals, before this court of appeals that were not made before the district court or were made differently. I don't think that there's a waiver argument. And if the court were to look at the motion to dismiss, that was filed by the attorney general, which was doc number 1530, excuse me. Yeah. Doc number two 56 at page three 80. The state in the motion to dismiss. Alleged claim was raised in petitioners. 1995 habeas petition and denied on the merits by the California Supreme Court. In our response to the opposition to motion to dismiss, we argue that the claim, the respondent argued claims were first raised in the state petition. And we acknowledge that. Right. But it seems to be inconsistent. I mean, there's different things that happened. You studied different things in the district court and the traverse doc at two 55. That was inconsistent with that. You said in response to the motion to dismiss. And then you said something different with your real 59 emotion. And you didn't challenge procedural default there. So. Perhaps it doesn't matter. Perhaps we reach it, but it seems to me that at best, what would happen to the district court was inconsistent. But, but whatever we did in the. The motion to dismiss. Oh, he's frozen. Just hold on. Stop the clock. Can you stop the clock? Thank you. Yeah, you've returned. You've returned from the frozen. Okay. We stopped the clock. Okay. So go ahead. Well, you're frozen again. About now. You're back. Regardless of whether we were inconsistent. The fact is that the district court found that the first. Petition that the claim was denied. In the second petition, when actually was denied in the first petition. That's when it was raised. Can I ask what controls? Can I raise one more question about this before you go on? When you, when you get back up, would you show me where in the first petition? Or just direct me to the part of the record. We're in the first petition. You raised the underfunding issue. You can do it when you get back up on rebuttal. Yeah. That's fine. I wanted to, if I could answer the court's earlier questions about. Mr. Reno's situation. With respect to the, the testimony. This was a mental state case from the very beginning. Anyone that knew that was aware of it. And while maybe Coburn's testimony wasn't accepted in full in the first trial. Had Coburn's testimony along with the Atascadero state records, Along with the CDC, our records, which were prison records, which found mental issues with respect to it. All being presented and had there been the proper funding that was that was raised or given to counsel, then those matters could have been raised in the second trial. Counsel has the control of what witnesses to call counsel could have developed a full social history. That would have given the basis for giving the documents to the experts as in the Rogers case, which would have been a much different situation. And a much more. He to use the word that's used now a lot, but the robust presentation of mitigation evidence and mental health evidence. That if Reno had refused to test or testify in a manner that was inconsistent with that, it would have been part of what it was that the jurors would have seen. But here the jurors were not giving anything except for the confession of the Reno admitted during the killings. And we're not giving any mental state evidence at all. And we're given the testimony of a single penalty phase witness who was younger than Reno and did not understand nor know about the, the massive abuse that occurred to Reno during his time period as a child. I mean, it is frightening. So I'm assuming, I'm assuming you consider this your best argument because you used all your basically all your time on this, but I'm going to move you on to a couple of other issues that, that the court might think are important. Okay. Yeah. But I just in response, I do think the other arguments are important. I was trying to answer all of the court's questions. Okay. I think, well, we spent 20 minutes on this, so let's move on to, on regarding Reno's claim that his confession was coerced because the confession was very central to everything. What is your best argument for why this court should find the California Supreme Court's determination that substantial evidence supported the trial court's credibility findings to be unreasonable? Because there was, there was a lot of evidence put on on this and basically the court made a credibility finding. So you've got to overcome that under the double deference of AEDPA. So what's your best argument on that? Yeah. The remand is required because the state court's unreasonable fact finding procedure. Reno's confessions were obtained through threats and intimidation. The officers threatened to smash Reno's head in the wall. Well, but you're not, you're not directing, you're, you're not directing to my question. I said that there appeared to have been a credibility finding. Reno did put evidence on that it was coerced. The officers testified and a number of other people testified. There was the hole in the wall and you know about, and other people coming in saying how it was coerced and the court basically didn't found the officers credible on this. So how, how do you overcome that credibility finding? I mean, we're not hearing it for the first time. We're under double deference here. I understand, but Reno was, uh, was, it was unreasonable because Reno presented uncontroverted evidence showing a pattern of coercive practices. Now, stop counsel. Answer Judge Callahan's question. Just don't go back and read what you got in front of you. He presented evidence. The trial court held an evidentiary hearing on the, on the confessions voluntariness. The officers testified. The trial court said, I believe them and I don't believe the witnesses that Reno has put on. That may have been a mistake, but we're, as Judge Callahan indicated, we're in double deference land. Uh, so how can we overcome that factual finding by the district, by the superior court, which was affirmed on appeal by the, in the habeas by the California Supreme Court. The one, the one matter that was not, not considered was the fact that there was the motion to go into the jail, uh, unannounced and to have photos taken of the interview room itself. That motion was denied by the, by the trial court and counsel was not able to do that. When counsel went back in on a, on an announced visit, so to speak, there was evidence there that, you know, the wall had been changed and stuff, but he wasn't able to do that in a way in which even assuming there was even assuming there was a hole in the wall, I guess I'm still stuck with the trial court saying, I believe the officers that they didn't, uh, coerce this confession and the witnesses that your client put on, uh, for one reason or another, the trial court said, I don't believe them. Their stories don't match up. So we're stuck here with a factual finding by the trial court. Um, and the Supreme court of California, not overturning it, uh, you know, it's a pretty high burden to overcome. And that's why I guess judge Callahan's asking that question. Yes, I understand. And, and I'm trying to answer the best way I can. I appreciate that. But I just wanted to, I wanted to be clear that there's a, we don't have to take your client's version of the facts as true here, which is not a pleading issue. There was actually an evidentiary hearing where a judge made a finding. Absolutely. I understand. If I were to, to have gotten to another argument, I would have raised the argument about the destruction of the police records. I thought that's where you can, frankly, I thought it's where you were going to start, but we, maybe we can ask your opponent about it a little bit. So let's, um, I think I understand what your answer is on that. Um, with respect to the double jeopardy claim, can you address the state's argument, uh, which was made, uh, it, I think it was at pages eight to nine of the Respondent's Supplemental Answering Brief. And what it was was that even if we were to invalidate the conviction for the murder of Carl Jr., the multiple murder special circumstance finding is unchallenged and is a sufficient basis to uphold the validity of the judgment in the sentence. You didn't ever address that. I'm not sure exactly how to respond to the question other than to say that were, um, the special circumstance were count three to have not occurred, um, or it to be set aside, there would have been no special circumstance. Well, I guess the question is, would the second degree murder conviction, uh, be a predicate for multiple murder finding? Assuming the, assuming that the conviction for the murder of Carl was vacated. I don't believe so, because count three was the only one in which the special circumstance was charged. I think the other two killings were pre, uh, definitely law and couldn't have been used. Okay. So it was, it wasn't with respect to count three, which is Carl. Right. And that's the only one. So on that one, getting back to getting to the merits of the claim, as I read the California Supreme Court decision, it says, look, the elements of the special circumstance, at least at the time your client was tried, were different than the elements of felony murder, which I would call simplicity. In other words, felony murder simply required that a murder be committed during the course of and in furtherance of a felony. But the special circumstance required that the murder be deliberate, knowing, et cetera. And that therefore, the fact that the judge didn't find the special circumstance in the first trial only meant, uh, didn't mean that your client wasn't, wasn't guilty of felony murder, or it just meant that he wasn't going to get the death penalty on that issue. And the state didn't seek, uh, this. So in the second, so they were precluded from seeking to, uh, a felony murder death penalty in the second trial on that issue. But that's the, all the preclusion that California law provided. I know I've missed, I know I've rambled a little bit, but that's what the court said. The court anticipated your double jeopardy argument saying it's not double. We're not, it's not double jeopardy on the, the guilt phase and the felony murder and the guilt phase. I'm not, we're not finding insufficiency of the evidence. We're just fine that the, the special was found to be not true and it didn't, so what the court did not find the insufficiency of the evidence. And I think the jury instruction to, on that was that it be premeditated or in the course of the, a felony, uh, committed that way. So, I mean, I looked at it sort of, I guess the first trial was kind of a bench trial and it looked to me like the judge decided, well, I'm not going to decide whether you assaulted this child when the child was alive or dead. So I'm not going to, I'm not going to hang it on that special, but that it, that there was clearly evidence to support that it was in the course of a commission of a felony and then found the special of the second and the first degree. That's, uh, But I think there was an acquittal of the, of the felony murder. It was found not true. It was found, no, the special, the special was found not true, but not an acquittal of a felony murder on the guilt face. And they specifically address that. Yeah. That's when the California see it's what is a matter of state law. The California Supreme court seems to have said the elements of the special circumstance contain an additional set of facts, not contained in felony murder. In other words, you can commit felony murder, even if you didn't intend it or it wasn't deliberate or willful, as long as it was during the course and furtherance of a felony. The California Supreme court said the special circumstance back in those days required more. It required a mental state. And therefore the judge is finding that the special circumstance wasn't true. Doesn't necessarily mean you didn't, your client didn't commit felony murder. So, I mean, that's what they said. And if that's an accurate statement of state law, I think we have to defer to them on state law. I think it dooms the double jeopardy claim. Unless I'm missing something. Let me go to judge baby for a second before I'm going to give you 10 minutes for rebuttal, because there's just so many issues here. But judge baby, go ahead. Go ahead. You. Okay. Well, basically, do either of you want to ask more questions? I have one more question. Okay, go ahead.  we're thinking about it. We're not a double jeopardy. I'm sorry. Unless you're included offenses. As I read the cases, the only constitutional right you have with respect to lesser included offenses is not to have the jury be given an all or nothing determination. That and undershad, since the jury wasn't given an all or nothing determination, it was told it could convict on first degree, second degree or manslaughter. What's your constitutional argument about the lesser included offenses? Put aside whatever your state law argument is. In other words, I don't know what you're entitled to in California court as a matter of state law of lesser included offenses. Well, I think federal claim seems to be seems to me in my mind, made difficult by shad. Can you address that? I think also, too, I'm in California. Having been in California trial judge, you didn't ask for any lesser included. Is that am I right on that? I don't think that the 272 and now the 647 a or whatever. I don't think they were asked for this. So what you're trying to argue is that the court had a sui sponte duty to do that. But that's a state law claim as opposed to a federal shad claim. So I assume Judge Cowan makes a good point. So let me make the question easier for you. Let's assume there is a sui sponte duty under the Constitution in capital cases to instruct on lesser included offenses. I'm still stuck on the shad case, which says once you instruct on a lesser included offense, once you give the jury an option, you have to give them all the options. Once you give them any option, you've satisfied the 8th Amendment's requirements. And in this case, I think the jury was given options. So I'm having trouble understanding your federal constitutional argument in this case with respect to the lesser included offense instructions. I'm not sure that this is the answer that the court is looking for, but what I understand is the Supreme Court's opinion in shad is not relevant under Edvin here, because the California Supreme Court issued an articulated opinion that did not rely on shad. I don't think that matters. The California Supreme Court, I mean, even if we reviewed de novo, the issue is whether or not your client was denied a constitutional right. And the only constitutional right I see at stake is not to have the jury being given an all or nothing choice. Judge Callahan points out that as a matter of state law, maybe not requesting it prevents you from making any state law arguments. But that's not what's concerning me. What concerns me is I don't think there's a federal constitutional right to be instructed on every conceivable lesser included offense. The federal constitutional right is only to have an instruction on some lesser included offense. And if there was, in this case, as there was, how is the federal constitution violated? Because the jury wasn't given the option of finding a crime that was less than the 288. Okay, what case says that violates the federal constitution? I cannot give you one at this moment, but I understand the court's question. Yeah, and Judge Callahan is going to give us some extra time. Okay, so you're three minutes over, but I'm still going to give you ten minutes for rebuttal, and we'll take whatever time we need with the government so we can have our questions answered. Thank you. Thank you. All right. I'm guessing you all can't see each other. You can see us. You can't see the – I can see Mr. Thompson. Oh, you can see him too? Yes. Okay, good. Oh, I wasn't seeing that one over there. Okay. If the government would please state your name and appearance, then we'll go from there. Thank you, Your Honor, and may it please the court. My name is David Glassman, G-L-A-S-S-M-A-N. I'm with the California Attorney General's Office, and I represent the State of California in this case. What I intend to do, if the court would prefer it, is I will proceed in the same order the counsel did, just to follow those arguments. I would like to spend more time on the certified claim that was discussed today at oral argument, but I will begin with the discussion of Claim 120 just because it was identified today. And although we are certainly asserting any procedural bars that we have asserted previously, just in the interest of a limited amount of time, I want to get to the gist of this claim to illustrate how, in our view, how insignificant this claim is. It's a practical matter on the facts of this case. So the claim is, if we boil it down to real terms, the claim is that notwithstanding the refusal of an ostensibly mentally competent individual who refuses a certain type of testimony, that that type of testimony obtained years after these events, just in the form of declarations and other secondary sort of allegations by forensic experts who were not in any way involved in this trial or in interacting with this defendant, that sort of evidence should be supplied and shows prejudice in the original trial death penalty proceedings. Now, the problem with that, among other things, as a practical matter... Well, you mean prejudice in the second trial. In the second trial. Which was the jury trial. The jury trial, correct. The court heard the first case, as has been discussed. So, the unique or the distinctive part of this case, among other things, is that we have, in the form of the first trial, a situation in which we know what happened when a qualified forensic psychiatrist did present testimony on defendants. Does it make a difference that the second trial is to a jury? You know, I can think of lots of times when I had arguments that I thought might not persuade the trial judge, but I wanted a shot at 12 people with them. Does it make any difference in this case? In this case, I think it's inconceivable that it would make a difference because the testimony, which, again, is obtained from a reliable, experienced forensic psychiatrist in the first trial, so that's what we know what was developed on behalf of this defendant, was disastrous by any stretch of the imagination. Were the declarations provided in connection with the habeas different in any way than the testimony in the first trial? I would say, generically, they are more sympathetic than the testimony in the first trial. So, let's assume that those more sympathetic experts had been presented in the second trial rather than the less sympathetic experts in the first trial. Why is it clear that there's no reasonable probability, I think, is a strict one standard? What do you mean by sympathetic, just so that I – sympathetic towards? What I mean is that Dr. Coburn offers what I think could be fairly described as a balanced assessment. In other words, Dr. Coburn, who again sees this defendant at the relevant time period, describes him as not having psychosis and not having organic brain disorder. Now, he has psychological maladies, if you will, but they don't rise to that level. But his testimony doesn't come in at the second trial. Correct. Correct. So, we're now looking at a second trial with no psychological testimony. I understand you might have been able to use the prior trial's testimony as rebuttal, but Reno says – well, Reno's lawyer says, well, at the second trial, I would have been able to – counsel should have presented the testimony of these experts that I've now got. And this testimony seems to me to be quite helpful in some respects to Reno, and it fell below the standard of care not to obtain it. Now, put aside the second issue, which I want to get back to, just focusing on the prejudice issue. It really doesn't matter what Coburn said in the first trial if they've got an expert now – first trial was vacated – who is looking – who is prepared to testify in a different way. I think it absolutely matters. It matters in several respects. First of all, it matters – and this may be what you refer to as the second part, so I don't mean to get there prematurely, but it matters that Reno then – Memra was saying, no, none of this is happening, right? Reno doesn't want laypeople testifying on his behalf. And that's what I wanted to get to then separately. Can you tell me when Reno said that? I'm not clear in looking at this record whether that was an instruction that occurred with respect to the penalty phase of the trial or the guilt phase or both. Can you tell me? I don't know offhand. That would have to be something that we would search the record for exactly when it happened. But I do know that the record in general, in the totality, shows a pattern on his part of asserting his interests, his attitude, whether that's removal of a lawyer, whether that's the refusal to present certain testimony. And that culminates – and I think Judge Callahan referred to this – that culminates with his insistence in the penalty phase of the jury trial of telling the jury, if you're going to convict me of these crimes, give me the death penalty. Well, did they reopen it? It seems like the jury went out and then they reopened it to let him assert his right to testify. My recollection is that it was reopened. That is correct. But, I mean, because a defendant has an absolute right to testify, and that's one thing that counsel can't mess with. Counsel can make a lot of strategic decisions, but that's what I saw going on there. And if he had been denied that right to testify, then that would have created a whole other issue. And that is not a claim in this case. But in order for this claim to be pursued, what has to happen as a minimum is he tells this court, certainly any judge would have been whipsawed with this claim, because he's telling this court, notwithstanding my adamant refusal, and notwithstanding what I submit is still relevant, which is how the testimony of Dr. Coburn, who described Reno's sadistic orientation, his interest in bondage, his interest in harming, the idea that that is all going to be excised from this case. Is your argument on this point that he can't establish prejudice because if he put on his experts, you would have recalled Coburn to the stand in the second trial? The argument is both. The argument is, first of all, as was indicated, if there is a denial of a Strickland claim, that encompasses both the performance prong and the prejudice prong. No, I understand, but we're not looking at the first trial. First trial, the judgment was vacated. He goes to a second trial, and his counsel's argument is now, my trial counsel should have presented psychiatric testimony. And I'm trying to figure out what the relevance of Dr. Coburn's different testimony than the one presented in the second trial is to his claim of ineffective assistance in the second trial. The relevance is that with or without Coburn, per se, there is plenty of information, notwithstanding the claim that all of this prior documentation of his mental state is favorable or is sympathetic, there is plenty of information that is malevolent, that is harmful to him. How is that going to get in front of the jury in the second trial? That's my question. Were you going to present Coburn as an expert? We have to speculate, but certainly it's fair to assume that a process... Well, it's rebuttable evidence. I mean, it's rebuttal evidence of, I have all these problems, as opposed to, I would think that any defense counsel would know that that's evidence that would be used for impeachment, right? As any prosecutor would know that that is subject to cross-examination and further impeachment. And just again, to reiterate, in a context in which the defendant says, I don't want any of this presented, period. Can I ask you to address an issue we never got to with Mr. Thompson? It's the young blood issue, the destruction of evidence issue. Tell me why, even assuming this wasn't done in bad faith, and I think whatever our skepticism may be, we have to accept the state court finding that it wasn't done in bad faith. Tell me why this isn't something that requires some judicial action. Well, it got judicial action. It got judicial action because, following the first trial, in a situation in which, if this case had happened just a few years later, he wouldn't have gotten an outright reversal, right? California changed its policies in that regard. He would have gotten a conditional remand. Instead, all the murder convictions are set aside. The special circumstance finding and the death verdict is set aside. And he is allowed to go back to the Superior Court to assert a claim of police misdemeanor. Right, and the California Supreme Court says in the first appeal, this is evidence that has potentially exculpatory value. We don't know what it would be, but you should have been allowed to discover it, right? But we know that because we don't know what's in there, we don't know whether there's an envelope empty, a banker's box. We don't know if it's salutations or criticism. Right, I agree. I agree with all that. So then the state, and I'm going to use this word guardedly, improperly destroys this stuff. It doesn't do it in bad faith. It doesn't do it in order to prejudice Mr. Reno, but it shouldn't have been destroyed, correct? Your Honor, I would respectfully disagree. This is a proper destruction. This is a destruction. No one is alerted to, no one is on notice of the need to preserve it. Well, the state is an entity, and you're the Attorney General's office, which argued the case to the California Supreme Court, surely knew that there was an issue about these documents, correct? What the Attorney General's office knew, what the appellate prosecutor knew, is that a claim was being asserted in the appeal. And let's make this much simpler. Let's assume the appellate prosecutor knew the claim was being asserted for those documents, and the appellate prosecutor went back and destroyed those documents. We'd have a problem here, wouldn't we? We'd have a big problem. Okay, so why can't I impute the knowledge of the appellate prosecutor to the other agents of the state? You can't do it because, number one, there's no authority to do it, and number two, it's not fair. The reason that it wasn't done here is there is no rule, and there is no ethical rule, much less a legal requirement, that says that when a prosecutor is evaluating, for example, an alleged destruction of evidence claim regarding records that, lo and behold, may still exist or may not exist, that appellate prosecutor is under some form of duty to think, notwithstanding the fact that this is limited to the appellate record, we're not engaged in any extra record proceedings here, this is not a habeas that's ongoing, I need to reach out and notify, as amicus curiae, on behalf of this defendant, if, lo and behold, you have any records here, you need to preserve them. Could that have happened? Potentially, and good for them. If you were a trial prosecutor, and somebody asserted a claim to some records, would you have an obligation to tell the police department not to destroy those records while this claim is pending? It would turn on the circumstances of that case and whether, in my dealings with them, there was any contemplation or awareness of what had happened. It's fair to say that in this case... That seems to happen, in my experience, all the time. Every time a claim for records is made, a responsible prosecutor says to the police and others, keep those records safe until we finish litigating this. Now, I understand we have a different circumstance here. What I'm pushing back on is your notion that this was perfectly OK. I think it wasn't done in bad faith, but I have a hard time understanding why it was perfectly OK, since the state knew these records were the precise topic of the California Supreme Court appeal. Well, OK, but if... If you look at it, this was the direct appeal, and in California, death cases go to the Supreme Court. They don't go to the intermediate court. So I guess if they could have shown that... ..that the police department was aware that after the Supreme Court rules on something, then there's a state habeas and there's a federal habeas and they destroyed it, that would be a different situation, right? But I don't know if... I have a hard time understanding habeas. I'm not sure how many police officers or police... ..if you sort of think that the case is over once the California Supreme Court has heard it. The judge in this case, the fact-finder on this, makes a finding, right, that indicates there is no awareness of any pending proceeding, there is no intention to withhold information or destroy evidence. That's why the only evidence in this case, and that's really to glorify it, is a newspaper quotation... From the chief. ..of the police chief, in which the police chief is asked during the trial, he is told that Memro's lawyer, then-Harold Memro's lawyer, says, you routinely extract confessions from people, your police department, and the police chief says, very unremarkably, that that allegation is news to me, I've never heard it, it's never been brought to me, if it was, I'd investigate it. That's the entire basis for their claim that there was a conspiracy, because that's what it is in this case, a conspiracy to go back and destroy information related to Memro's case. What is the timing of that newspaper article and the comment from the police chief? You just said it was during the trial. So the original trial... I thought it happened after the argument on appeal. Do I just have the timing mistaken? I think so, Judge Beatty. So the original trial takes place... I thought like Judge Beatty, so... So the original trial takes place, if I recall correctly, in 1979, right? The last, the murder of Carl, the 7-year-old, is in 1978, that leads to the discovery of the other crime... And the chief testifies at the first trial, yes? I don't recall if the chief testified, but not on this issue. Right, but the article doesn't... I think what the question was being asked... The article doesn't appear until after the first trial. When did the article appear? The article appears, as I recall, in 1979. The case is argued on appeal in the spring of 1984, and the records are destroyed. That is, the case is argued to the California Supreme Court on direct appeal in the spring of 1984, I think in May or so of 1984. The records are destroyed, as it turns out, coincidentally or not, that is no evidence to the contrary, following the argument, but before a decision is reached. Right, but we're asking about the article, and I thought the article was dated after the verdict. Not a big deal, we can go back and check. I guess the reason I was asking is, I understood Mr. Reno's argument to be that the timing was particularly suspicious and demonstrated bad faith, because this article showed that the police chief was saying this after a compelling argument was made in the Court of Appeals that the police were using coercion to extract confessions. So I can tell you with confidence that this statement is made years before the California Supreme Court hears this case, much less decides it. And as we well know, if there were questions... Are you talking the first time it went to the Supreme Court or the second time? Correct, the first appeal. So again, a 1979 trial, a 1979 statement by that police chief who, you know, it's alleged over and over again. Well, he personally responded. That's his job. He is the spokesperson ostensibly for that police department. He has been advised that there is routine misconduct occurring in his department. That statement, I submit, regardless of what the timing is, adds nothing to this case. But if it did, if it did on the timing argument, why wasn't it destroyed in 1979 or in 1980 or in 1981 or two? Now, I think actually, to be fair, the state law changes maybe around 1982 or one, but they still don't destroy it for years. At some point, somebody looks up a bunch of cases, I'm sure, and says, yep, these are all ready to go. There's no legal condition or notification that this case is subject to an exception. They destroy records. So your opposing counsel sort of makes the flip side of that argument and suggests that because the custodian of records testified that this was the first destruction of documents in which he had been involved, that timing shows that the state selectively decided to destroy these records at that time. If they could destroy them, I think, by regulation or statute after two years, but they were imposing a five-year policy, why had there not been sort of rolling purges of documents as they became five years or older? And so why wait until after this argument on appeal, and then two months later the records are purged? I don't know that there was any specific testimony, much less a finding regarding the precise policies of the Southgate Police Department. Well, especially on capital cases, because if Carl Jr. were alive, he'd be close to 50 years old now. Yeah. Because he was seven in 1978. Correct. And the other boys were a little older. They were like 10 and 12, correct? Correct. So, I mean, capital cases probably should be different than other cases, but that's not really what we're here for, I guess. I mean, in California, we're over 40 years from the first – well, over 40 years, and then allegedly the murders of Carl – Ralph occurred before Carl, right? Scott and Ralph were murdered in 1976. Carl was murdered in 1978. I want to just spend another second on this, because – and I guess this is an issue I'd ask Mr. Thompson to talk to if he has time. Let's assume, for purposes of discussion, that there was a young blood violation. What would the remedy be? Well, and not to belabor it, but as the court indicated in talking to Mr. Thompson, the young blood factors are just factually – No, I understand. I understand. What I'm trying to figure out here is normally when you see a young blood violation, there's a remand to develop a record. I can give you one. And in this case, there was a habeas proceeding in which, as I understand it, the officers were deposed and evidence was put in. So I'm trying to figure out whether or not, in effect, Mr. Reno got all the remedy he was entitled to, even if there had been a young blood violation. He did. And the reason that he did is twofold. First of all, as I indicated before, notwithstanding the way it's characterized in his briefs, you can't say about an empty box or envelope, we know what's in it and we know it was likely exculpatory. You can't do that. So we don't know what's in there. Yes, he got a remand. But this would be a different case if this was DNA that had been destroyed, for example. That is why young blood in those cases turn on the obviously potentially exculpatory value. But we do know, going back to the first trial, that he had – not only did he have the opportunity to present comparable evidence, but he did. They called witnesses. They called witnesses who had experience with officers in that police department. As you noted, the officers testified. They all testified. Three of the four, say, just with respect to records, right, because there's no magic to what is contained in a record as opposed to some other potentially incriminating, if you will, aspect of the officer's background. Well, the officers added some things that probably weren't in the record, correct? Well, but on the bottom-line question, three of the four said, my file contained no complaints, no allegations. And at what point did they – they were deposed, I think. There's no question. Question. Was that at the first trial or the second trial or in the habeas procedure? It was at the second trial as the issue was explored. Right, after the records had been destroyed, they took the stand and they were asked questions. And I assume three of them said no complaints at all. The four said I had a complaint, but it was unrelated to interrogations. That's correct. That's uncontradicted. And the fourth, by the way, is not the heavy in this version of what happened. He's the good guy in the version. So what does that help them? So at the guilt phase in the second trial, that was before the jury, did any of these people testify about the circumstances around the confession before the jury? Not with respect to these issues, no. They testified at the motion to suppress? Yes. And that was an issue for the court at that point. So if it's not – my understanding is that Petitioner Reno is arguing that it should have been evaluated under Brady as opposed to Youngblood. So if it were evaluated under Brady, then the argument is better for the petitioner, correct, in terms of the remedy? But if it's evaluated under Brady, we have to – first of all, it is in a different category as a matter of law because we're talking about, at best, the failure to preserve potentially useful evidence. Second of all, there is, as indicated – There's more remedies under Brady, right? But the fact that we know here that there was, as I indicated earlier, the issue is whether or not there was an opportunity to present to someone considering the voluntariness of the confession this claim. And there was. There was in the form of other individuals. Seventeen people were called, and the trial judge found that only two of them had anything relevant to say with respect to the allegation here. So it is not fair to say that whether that box was empty, full of irrelevant information, or something else, that that somehow, for reasons that we have no idea, possessed some sort of uniquely helpful information regarding this claim. We don't know if there was anything in there at all. But we do know that there was an opportunity to present this claim in the form of those officers who could be cross-examined, other citizens who had interacted with that police department. And we do know that where this leads, ultimately, is to the confession claim, which I want to talk about briefly. Before you get there, was there a request for a spoliation instruction at the second trial? I can't find one. I don't recall any such request. One of the remedies that you might have under Youngblood is to instruct the jury that if this stuff hadn't been destroyed, it might have been favorable. But as you know— But there wasn't such a—well, whether or not that should have been given. I just wanted to—was there a request for one? I don't recall any such request. But no judge making these factual findings would proceed on a Youngblood theory, by definition. I understand. I was asking you to assume that there was Youngblood. So just because I think the court had some questions about the coercion claim, I'll talk briefly about it, briefly about double jeopardy and the lessors, unless the court would like me to move to something in particular. Well, if I may, are you suggesting that beyond the suppression hearing at the second trial, Mr. Winger's counsel could have not only cross-examined the officers to undercut their testimony, but also have then presented the witnesses to say that they had previously been coerced by these officers and had made that an issue at the trial as well? That would require all sorts of litigation and theories, none of which was attempted here, so I can't speculate as to how that would have played out. So your recollection is that after the defense lost the suppression hearing and the confession was going to be admitted, they didn't pursue that attack that the confession was coerced? At the trial? The validity of the confession was challenged throughout the trial, but it was challenged for a variety of reasons, particularly just as an inaccurate statement by an untrustworthy statement by memo. So, again, I'm just reluctant to propose what never happened. Sure, I understand. On the double jeopardy claim, I tried to summarize to Mr. Thompson what I thought the California Supreme Court said. Was I accurate? I would just add the following. Okay, the special circumstance is different than the crime. The special circumstance is different than the crime. The preliminary point that I would make that I don't think was part of your formulation and might not be, but I would like to make it, is that the essential predicate, the first predicate for a double jeopardy evaluation, which was never asserted, by the way, never asserted in the second trial, and there is a procedural bar that applies there. California requires that double jeopardy be pled. So the first problem with the theory, with this theory of double jeopardy, is double jeopardy requires at a minimum the same offense and that there had been, for example, an acquittal of that offense, which is then barring a re-prosecution. Now, the crime of first-degree murder, the substance of crime of first-degree murder with which he was charged, is not the same offense as the enhancement or what's literally the same. That's because the California Supreme Court tells us that. Now, let me change the facts for you a little bit because there is this notion of collateral estoppel. Let's assume that the felony murder, the crime of felony murder, was itself an aggravating circumstance. It didn't require any other mental state. And the judge in the first trial said, I find there's no special, we call them aggravating circumstances in Arizona, there's no special circumstance here. Then it seems to me that would have been a factual finding that he didn't commit the felony murder. So your argument has to be based on the notion that the special circumstance is different than felony murder, right? That is part of the argument, absolutely. But my primary, my first argument is that these are different things under the law and that there is no decision from any court. But the collateral, Ashton Swenson says, when a decision is made that necessarily resolves facts, then the party is entitled to use that in the second trial, to bar a second trial on those facts. So it seems to me the reason your argument works is because the special circumstance is different than felony murder. If it were identical to felony murder, I don't think he could have been retried for felony murder the second time. Well, if that is the reason, there's an additional reason combined with that reason, and that is the basis for the trial judge's ruling in the first case. The trial judge says, and every reviewing court unanimously has confirmed, the trial judge says, I am not finding true the special circumstance, right? That operates as an acquittal of that special circumstance. He was never tried or charged with it again. However, because it has alternative prongs... That's all I'm saying. Yes. And the other thing I would add, even in terms of collateral estoppel, is the rule in collateral estoppel, and the California Supreme Court, I do need to add Judge Hurwitz, said it's not at all clear to them that collateral estoppel applies within further litigation in the same proceeding. If that were the only issue in front of us, I think it would be a difficult issue. I'm not sure the California Supreme Court would be right on that, but I think... Let me ask you another question while your time is running down. Yes. On the lesser-included offense instruction, is there any constitutional basis for Mr. Reno's argument? I understand that he's arguing that under California law you should have given these, but am I right in thinking all the Constitution requires that the jury be given some choice? So we think it is exactly as you stated, and the reason for that is, and the law is clear here, frankly, Beck v. Alabama says that in the circumstance where there's no alternative, that's when the requirement to give the lesser applies, right? Not only was there the alternative in this case of second-degree murder, the jury was given that alternative in the second trial, but the jury was also given the alternative, the option of another, a further reduced lesser... Manslaughter. Manslaughter. So Beck is out, Schad controls, Schad says when there's an option, the double jeopardy issue disappears. I would also add, as I think you have identified the primary flaw in the argument, the additional reason that it doesn't apply here is it's argued by this defendant, trickling the reply brief, and I think you touched on this in questioning Mr. Thompson. Well, did the judge refuse this? Because that's what they said, the judge refused this. The judge never refused a lesser. I think we should give credit where credit's due. I'm sorry, Judge Callahan. The judge never refused it. It was never requested. They didn't request lesser included other than second-degree and manslaughter, right? They didn't request 272-647-A. They did not request either the misdemeanor trial molestation or the delinquency of the minor claim. And the California Supreme Court says that only one of these is the subject of a certified claim. That's the 272. As to that crime, that misdemeanor offense, California Supreme Court says it's not a lesser under state law. That's a state law issue. How states define lesser included offenses is up to them. There's no terrible reason why they... If I were to understand your argument, you're proposing that the 647-A isn't even before us. It is not as a certified claim. As a certified claim. We'd have to certify it. And if we believe that there was no evidence, if there wasn't sufficient evidence to issue a COA, then we can deal with the 647-A differently than the 272. That is correct. As to either of them... And by the way, there's a concurrence in one of the state court opinions that finds, I think correctly, that where the special circumstance is felony murder, there are no lessers. Because felony murder is a theory of liability. It's not charging per se an enumerated felony. But the last thing I would say about the lessers and the idea of unfairness is, number one, it doesn't apply because of that. And number two, the theory is so far-fetched, right, that with respect to Carl, that luring a seven-year-old boy into a room and distracting him with lights to either sexually assault him and then strangle him or strangle him first, that there's a misdemeanor there. If you look at the... Did the greater offense, is it the 288 offense, require a touching? It does require a touching or... It requires a lewd act or an attempted lewd act. Doesn't it require a touching? I believe so. So I guess the theory is he didn't touch him until... He didn't touch him during a lewd act. He touched him to kill him. But if you'll notice... They talk about unclothing him. In the first memo opinion, without really any explanation, there was a discussion by the California Supreme Court of how the conduct is there regardless of the timing. Yeah, they talk about constructive touching, and that's what I was trying to get to. What's your understanding of what constructive touching means? Well, my understanding instead is that under circumstances where, and in light of the confession, where we know what the intention is, he is either engaged in that act or in an attempt to commit that act regardless of when he strangles the little boy. That's the bottom line. And if there was some far-fetched theory that, lo and behold, it's only a misdemeanor that's happening in that room... No, I'm not suggesting that at all. I'm just trying to figure out... Also, the jury knows because he was tried with the other two murders, so the jury also is aware of the other two circumstances in his confession, correct? Yes. Which I want to take you to because you're not going to have rebuttal time and it'll end up about even. Okay. In analyzing prejudice, which claims are we going to be going to the prejudice prong? And in looking at prejudice, you know, obviously, factually, this is a tough case for someone. If you assume that the confession comes in and so you have two boys that are murdered and previously that he admits to and there's corroboration that only he would know facts of the slitting of the throat and all of that, and then you have Carl's situation, Junior's, which happens after, the facts of three young boys being murdered in the ways that they were murdered and the sexual content of it that he admits in his confession, I think he was attracted to Scott but not to Ralph and a lot of things. How does that particular case, when you're analyzing prejudice on any of the prongs where we're required to, what can overcome those facts? I mean, they're very ugly facts for the petitioner. Are we able to look at that? Well, I think, as I think you're indicating, even by the standards of the capital case, this is an extraordinarily aggravated case in terms of the facts of these crimes. But if your question is whether we're potentially evaluating the case minus the confession, the problem with going there at any level is, and I understand and obviously we stress in the brief, and I would stress today, the deference that is required by the ADPA, but we have a much simpler resolution in this case before we even get there. The judge hears all this evidence about the alleged infirmity of the confession. He hears these witnesses. He listens to the police officer. The defendant testifies. He makes a credibility finding that they're telling the truth and that he's not. And so that's the end of the confession claim, and whether or not, based on the information that is stressed in this case, whether or not another trial judge hearing a motion to suppress might conceivably have come to another conclusion, this trial judge has no difficulty making that determination and rejecting the coercion claim. The finding is upheld by a unanimous Supreme Court. None of those judges see it differently on the facts. Zero of the seven. Without the confession, though, any prosecutor would know there's not much left here. Certainly as to the... So a defense counsel would certainly want to knock that out because there really isn't that much left, and I don't even know that you could retry Carl Jr. with enough evidence without the confession. But I understand what you're saying. But when we're talking about the IAC, that you've got two prongs, and we're talking about prejudice, I'm just wondering where, from your perspective, do the really ugly facts of what happened here, that three boys and predatory behavior and all of that, where does that come in in evaluating if we have to get to a prejudice prong of the IAC? Because sometimes it's like, you know, if God came in and said the person was a good person but the facts are so bad, someone might say, well, nothing's going to overcome the prejudice of these facts. I'm just wondering, where does that come in here? We look to ultimately the evidentiary record in this case, and we ask, assuming that we are crediting one, whichever ineffective counsel claim, whether or not it is reasonably probable that had some other lawyer done something else in defense of this defendant, there would have been an acquittal of the special circumstance. And there is no demonstrable basis on this record to conclude that with respect to any of these claims. I see that I've gone well over my time. So unless the Court has questions, I'll submit. Okay, thank you. Thank you very much. All right, now we'll come back to counsel for the petitioner appellant. And I've given you 10 minutes on the clock, so we'll end up about even at the end of all of this. Thank you. Thank you, Your Honor. First, Judge Hurwitz, with respect to the $3,000 amount of funding, I couldn't find anything particular as to the claim, but on page 113 or docket page 126 of the opening brief, we say here Reno was given $3,000 to investigate his first state petition. The court denied his request for additional funding. Now, I understand your brief says that. I'm trying to figure out where it was raised in the state court procedure. His first state petition, Excerpt 447 at 1274. Excerpt 447? 447-1274. Okay, thank you. That was the only I could find from the briefing. Now, with respect to the numerous arguments that have been made with regard to the state, I think maybe starting off with the notion of the experts that could have been called and the evidence that could have been presented at a trial had proper investigation and the experts been given the documents that they needed. I would say that it's really not a matter about whether or not that evidence is favorable or whether it's more sympathetic. What it is, is that it is all evidence of mental state and mental condition, which was at the heart of this case. From Reno's perspective of being in a Tascadero State Hospital, getting released, and asking to be returned for further treatment, his diagnosis is a mental disorder sex offender. The other matters that are there, coupled with the testimony that Dr. White could have provided and that Dr. Woods could have provided, would have been the core of this case. Dr. Coburn's testimony could have been put in to some extent with respect to his analysis. Even if there would be counterpoints and maybe ways in which to impeach or lessen the power of any of that information, it could have and would have made a difference because the jury would have been given some explanation for what occurred in this case. As it stood now, it was just simply, well, the confession didn't really happen. The confession's not really there. It was a futile defense. It was a mental state case. It needed a mental state presentation, both at the guilt phase and at the penalty phase. And it needed an evidentiary hearing, either in the state court or in the district court, in which all of this information, subject to the challenges that the state might want them to have made or subject to them bringing in other witnesses to counter, but it could all have been aired fairly and fully in front of the district court. It wasn't because the district court denied it mistakenly. As to the exculpatory nature of the destroyed records, the police chief made the statement. And as I recall, I do believe the statement to the press was really wrong, but the chief ordered the destruction of the records shortly after the oral argument was heard in the case. And while I appreciate police officers may not understand the nuances of oral argument and other procedural or habeas matters, they certainly know that an opinion is what comes after oral argument. And when the records were destroyed, they weren't destroyed so that all five years were destroyed. They were destroyed in such a manner that only the records pre 79 were destroyed, which was the time period that Reno's confession occurred. And the issues regarding it were there. So the period from 79 to 82 wasn't destroyed. So if they had decided that they were all of a sudden going to do a purge of the records when the law changed in 82, they should have erased all of them. Instead, they only went back to pre 79. So it is suspicious in terms of the timing, because the timing of the destruction is much more consistent with the timing of the appeal and the oral argument than it is in any of the timing of the statute itself. The newspaper article only gave rise to the fact that the chief was aware of the fact that these complaints had been made known. That was attached to the state. Was the police chief even aware that the oral argument had occurred? So if Mr. Glassman asserts that the chief made those statements in the article five years earlier, is there something that suggests that the chief then knew about the oral argument at the time when the records were being selected for destruction? No, and that's why the evidentiary hearing needed to be had. Those records needed to be fleshed out, and the chief needed to be called to find out whether or not he was aware of it, because that ties into the trombetta nature of it, or the Brady nature of it, or even the Youngblood nature of it as to whether or not those records were destroyed in bad faith when they had exculpatory value. And I must disagree with my opponent in this matter. Police misconduct records do not contain laudatory information. They contain under pitches complaints of citizens by actions of police officers that are wrong. They're not laudatory reports. Those go in a totally different file. So if there was anything in those files, it would have been exculpatory as to Mr. Reno's situation, not inculpatory as to the officers. It wouldn't be any different. But I think you're overstating it a bit. There could have been stuff in those files about how the officers didn't follow police procedures with respect to maintaining their weapons or other things. We don't know. There had to be something in those files relating to their misconduct in obtaining coerced confessions. But the problem is, is we don't know what was in those files. So that gets me back to the question I asked your friend. There was at least some testimony from the officers that there wasn't anything in three of the files, and there was only one other thing in another of the files. Why didn't you have a sufficient opportunity in the state court to develop whatever record you thought you could develop with respect to what was in those files? Because the files were destroyed. No, I understand. We start off from that assumption. The files were destroyed. So what remedy do you want? Do you want us to throw out the convictions and say he can never be charged? What do you want us to do? I want us to go back and have an evidentiary hearing where we can determine whether or not there was a bad faith or a trombedo violation and figure out where they were. Were you denied an evidentiary hearing in the state court? Did you ask for one? I believe in the first state petition, maybe the second state petition as well, an evidentiary hearing was requested on the claims that required evidentiary review. But did you request one before the trial court? I'm not sure whether trial counsel requested one other than asking and those are two different things.  are two different things. But because the records weren't there, you couldn't impeach them. I understand that. I understand that. I'm asking a procedural question. You moved to suppress the confession, correct? Yes. The officers testified at the suppression hearing, correct? Yes. You had the ability to question them about whether there were any records out there that might somehow indicate that they'd done something wrong, correct? Yes. They could have requested the pitches records. Right. Witnesses were put on it, were put on to testify that somehow these officers had mistreated them in the past. They were cross-examined. The judge didn't believe their testimony. Trying to figure out what more in the nature of an evidentiary hearing you would obtain if you got relief on this claim? You would be able to call the chief to find out or figure out what are the ways to find out whether there was an action in bad faith. You would have been able to try to reconstruct whatever those records were in order to put on the evidence. But why couldn't you have done that at the hearing that was held is my question. This may be ineffective assistance, but put that aside for a second. Didn't you have the opportunity to do all that in connection with the motion to suppress? Well, trial counsel did call the two witnesses, but he wasn't able to impeach the officers directly. And the officers just got up and said, there's nothing in my file. Well, I understand he wasn't. But I'm getting back to the question of remedy. It seems to me if there was a young blood violation, and you seem to be on the same page on this, you'd get an evidentiary hearing to determine what was there, what was likely there. And in this case, you knew at the time of the second trial, the evidence had been destroyed. The officers were put on the stand. You had the opportunity to call the police chief if you wanted to. The opportunity to do whatever else you wanted in the motion to suppress. And so we have a record, and I'm trying to figure out what other record you'd like to develop. Well, you'd like to call the chief police, and you'd like to try to figure out what happened with the destruction of the records. As to – Your time's up. Let me find out if either of my colleagues have any additional questions. All right. We've given you additional time, and so your time's up. If you want to sum up in one minute, you may do so. I just think both in terms of the certified records, certified issues and the uncertified issues, we ask that the court certify those issues and that in the end of it, ask that the matter be remanded as claim 120 for an evidentiary hearing and that the matter be remanded as claims 107 through 109 for an evidentiary hearing on trial counsel's ineffectiveness and that the court remand the matter for those purposes and for the destruction of the records as well so that Reno can have a full and fair hearing in the district court where all this evidence is introduced and the petition be granted. Thank you both for your argument. This matter will stand submitted. This court is in recess.
judges: CALLAHAN, HURWITZ, BADE